1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  LILY A. KORMAN, State Bar No. 242688
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone: (415) 703-5507
    Fax:  (415) 703-5843
8   Email:  Lily.Korman@doj.ca.gov

9  Attorneys for Defendant K. Peeples

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ANTHONY MARVELL SEMIEN,<br><br>                          Plaintiff,<br><br> v.<br><br> K. PEEPLES,<br><br>                          Defendant. | C 07-2803 CW (PR)<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>The Honorable Claudia Wilken |

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 2

    Introduction .................................................................................................................................. 2

    Statement of Issues ...................................................................................................................... 2

    Statement of the Case .................................................................................................................. 3

    Statement of Undisputed Facts ................................................................................................... 3

        A.    Background Information. ........................................................................................... 3

        B.    Semien's Refusal to Exit His Cell and Subsequent Agitation and Disruption of the Escort. ........................................................................................................................ 4

        C.    Semien's Alleged Lip Injury. ..................................................................................... 5

    Legal Standard for Summary Judgment ..................................................................................... 6

    Argument ..................................................................................................................................... 7

        I.    OFFICER PEEPLES IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE DE MINIMIS FORCE TO RESTRAIN SEMIEN AND DIFFUSE THE SITUATION DID NOT VIOLATE THE EIGHTH AMENDMENT ............................. 7

            A.    Semien Cannot Show Excessive Force Unless He Demonstrates Evidence that Officer Peeples Used Force Maliciously and Sadistically for the Very Purpose of Causing Harm and Not in a Good-Faith Effort to Maintain or Restore Discipline. ............................................................................................... 7

                1.    Semien Sustained a Minimal Lip Injury, Apparently From Officer Peeples's Act of Maneuvering Him Towards the Wall. ....................................... 8

                2.    The Application of Minimal Force to Guide Semien Closer to the Wall Was Necessary to Maintain Safety. ........................................................... 9

            B.    The Minimal Amount of Force Was Justified Under the Circumstances Because Semien Refused to Comply With Orders and Turned Toward Officer McGuirt in a Threatening Manner. .............................................................. 10

                1.    Officer Peeples Reasonably Perceived a Need to Gain Semien's Compliance with the Order to Face Forward in Order to Maintain the Officers' Safety. ......................................................................................... 11

        II.    OFFICER PEEPLES IS ENTITLED TO QUALIFIED IMMUNITY ........................ 12

            A.    Semien Cannot Defeat Officer Peeples's Defense of Qualified Immunity Because She Took the Necessary Action to Restore Order and Acted Reasonably Under the Circumstances. ....................................................................... 12

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.

Semien v. Peeples
C 07-2803 CW (PR)

i

## TABLE OF CONTENTS (continued)

|   |   | | Page |
|---|---|---|---|
|   | B. | Officer Peeples Did Not Violate Semien's Clearly Established Rights When She Applied a Minimal Amount of Force to Maintain Safety. | 13 |
|   | C. | Officer Peeples is Entitled to Qualified Immunity Because It Would Not Have Been Clear to A Reasonable Official that Her Conduct was Unlawful. | 13 |
| Conclusion | | | 15 |

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.

*Semien v. Peeples*
C 07-2803 CW (PR)

ii

# TABLE OF AUTHORITIES

Page

**Cases**

Anderson v. Creighton
483 U.S. 635 (1987) ............................................................................................. 13

Anderson v. Liberty Lobby, Inc.
477 U.S. 242 (1986) ............................................................................................... 6

Bell v. Wolfish
441 U.S. 520 (1979) ............................................................................................... 8

Burns v. Reed
500 U.S. 478 (1991) ............................................................................................. 12

Celotex Corp. v. Catrett
477 U.S. 317 (1986) ............................................................................................... 6

Eisenberg v. Ins. Co. of N. Am.
815 F.2d 1285 (9th Cir. 1987) ............................................................................... 6

First Nat'l Bank of Ariz. v. Cities Serv. Co.
391 U.S. 253 (1968) ............................................................................................... 6

Graham v. Connor
490 U.S. 386 (1989) ............................................................................................. 10

Harlow v. Fitzgerald
457 U.S. 800 (1982) ............................................................................................. 12

Hudson v. McMillian
503 U.S. 1 (1992) ............................................................................................. 8-12

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
475 U.S. 574 (1986) ............................................................................................... 7

Norman v. Taylor
25 F.3d 1259 (4th Cir. 1994)(en banc.) ................................................................. 8

Oliver v. Keller
289 F.3d 623 (2002) ............................................................................................... 9

Saucier v. Katz
533 U.S. 194 (2001) ....................................................................................... 13, 14

Scott v. Harris
127 S. Ct. 1769 (2007) .................................................................................. 6, 7, 11

Whitley v. Albers
475 U.S. 312 (1986) ..................................................................................... 8, 12, 14

## TABLE OF AUTHORITIES (continued)

Page

**Constitutional Provisions**

United States Constitution
    Eighth Amendment — 2, 3, 7, 10, 13

**Statutes**

United States Code, Title 42
    § 1983 — 3
    § 1997e(e) — 9

**Court Rules**

Federal Rule of Civil Procedure
    rule 56 — 1, 6
    rule 56(c) — 6
    rule 56(e) — 6

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.

*Semien v. Peeples*
C 07-2803 CW (PR)

iv

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  LILY A. KORMAN, State Bar No. 242688
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
7   Telephone: (415) 703-5507
    Fax:  (415) 703-5843
8   Email:  Lily.Korman@doj.ca.gov

9  Attorneys for Defendant K. Peeples

10

11              IN THE UNITED STATES DISTRICT COURT

12             FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                        OAKLAND DIVISION

14

| ANTHONY MARVELL SEMIEN, | C 07-2803 CW (PR) |
|---|---|
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| K. PEEPLES, | |
| Defendant. | The Honorable Claudia Wilken |

20       TO PLAINTIFF ANTHONY MARVELL SEMIEN, IN PRO SE:

21       PLEASE TAKE NOTICE THAT Defendant Peeples moves for summary judgment under

22  Federal Rule of Civil Procedure 56 on the grounds that there is no genuine issue concerning any

23  material fact, she is entitled to judgment as a matter of law, and she is entitled to the defense of

24  qualified immunity.

25       This motion is based on this notice of motion and motion, the memorandum of points and

26  authorities, the supporting declarations and exhibits, this Court's file, and any matters properly

27  before this Court.

28  ///

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.    Semien v. Peeples
C 07-2803 CW (PR)

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

Semien is a state prisoner at Pelican Bay State Prison (Pelican Bay), proceeding pro se. On the night of November 8, 2006, Correctional Officer Peeples was ordered to escort Semien from his temporary single-cell to the housing rotunda to meet his new cellmate. Officers Bachmann and McGuirt accompanied Officer Peeples. Semien refused two direct orders to exit his cell. After finally backing out of his cell, Semien physically and verbally expressed his frustration at receiving a cellmate. While Officer Peeples stood behind Semien and held him outside his cell facing a wall, Semien turned toward Officer McGuirt and yelled over his shoulder at Officer McGuirt. Plaintiff's movement indicated a possible physical threat to the officers, so Officer Peeples immediately pressed Semien closer to the wall to restrain him. Officer Peeples was justified in using this minimal amount of force against Semien because he presented a safety threat to the officers. At best, Semien alleges minimal injuries from being "pushed" into the wall. As discussed below, Semien's Eighth Amendment claim of excessive force fails, and Officer Peeples is entitled to summary judgment.

### Statement of Issues

1. To bring a constitutional claim for excessive force in violation of the Eighth Amendment, Semien must show that Officer Peeples acted sadistically and maliciously for the very purpose of causing harm. Here, Officer Peeples used strategic and minimal force to maneuver Semien towards the wall that was inches away from his body when he disobeyed several direct orders to exit his cell and moved his body in a threatening manner. Do these facts fail to support a claim for excessive force?

2. Officer Peeples is entitled to qualified immunity if she could have reasonably believed her actions were constitutional under clearly established law. Aware of Semien's agitated state and his potential to cause further disruption to his escort, when Semien turned toward Officer McGuirt in a potentially threatening manner, Officer Peeples applied minimal force to regain control of Semien. Is Officer Peeples entitled to qualified immunity?

///

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.

*Semien v. Peeples*
C 07-2803 CW (PR)

2

## Statement of the Case

Anthony Marvell Semien (Semien), an inmate with the California Department of Corrections and Rehabilitation (CDCR), filed a complaint on May 30, 2007 against Pelican Bay Correctional Officer K. Peeples (Officer Peeples) for excessive force in violation of the Eighth Amendment. (Compl. 1; Order of Service 2–3, Nov. 13, 2007.) He proceeds pro se in this action under 42 U.S.C. § 1983, and seeks damages. (Compl. 3.) On November 13, 2007, this Court found that Semien arguably stated an Eighth Amendment claim concerning the alleged use of force by Officer Peeples on November 8, 2006. (Order of Service 1.)

Officer Peeples answered the complaint on January 11, 2008. (Def.'s Answer Pl.'s Compl.) Officer Peeples here files her motion for summary judgment.

## Statement of Undisputed Facts

**A.    Background Information.**

1. Semien is incarcerated within the CDCR and was at all times relevant to the complaint, a state inmate housed at Pelican Bay, in Crescent City, California. (Compl. 1.)

2. Officer Peeples is a Correctional Officer at Pelican Bay. (Compl. 3.) On November 8, 2006, Officer Peeples worked in the Bravo (B) Facility orientation housing. (Decl. Peeples Supp. Def.'s Mot. Summ. J. (Decl. Peeples) ¶ 3.) Her duties included processing new inmates at Pelican Bay. (Id.) Officer Peeples is slimly built and approximately five feet, one inch tall. (Decl. Korman Supp. Def.'s Mot. Summ. J. Ex. A (Deposition of A. Semien (Dep. Semien)18:17-24).)

3. Semien arrived at Pelican Bay on the evening of November 7, 2006. (Dep. Semien 12:20-21.) He was immediately housed in the Facility B orientation housing. (Id.) Semien stands at five feet, six inches tall and weighs approximately one hundred eighty-three pounds. (Decl. Korman Supp. Def.'s Mot. Summ. J. Ex. C.)

4. Because of the high number of inmates who arrive at Pelican Bay, all compatible and approved inmates must double-cell. (Decl. Peeples ¶ 3.)

5. Plaintiff has been an inmate in three different institutions within CDCR and has always demanded that he speak to a cellmate before being double-celled. (Dep. Semien 16:15-21.)

1 | Plaintiff acknowledges in his deposition that he is aware that he can receive a written rule-violation report for refusing a cell mate. (Dep. Semien 15:8-10.)

4. Semien testifies that he is aware of prison policies requiring compatible inmates to cell with one another. (Dep. Semien 15:1-7; 15:8-12.) Semien admits that he has always had the same criteria requiring that he speak to a potential cellmate before being celled together. (Dep. Semien 16:17-19.) He testifies, "I don't care what the rules say," regarding double-celling, and that if he is not given the opportunity to find out who his potential cell mate is, he will not cell with him. (Dep. Semien 14:11-14.)

5. Semien testifies that he is currently housed in Administrative Segregation housing within Pelican Bay because of an attempted assault on staff. (Dep. Semien 32:6-11; 32:14-15.)

**B.   Semien's Refusal to Exit His Cell and Subsequent Agitation and Disruption of the Escort.**

6. On the night of November 8, 2006, Officer Peeples, Officer Bachmann, and Officer McGuirt arrived at Semien's cell to escort him to the housing-unit rotunda. (Compl. 3.) Semien was aware that he was being escorted to meet his new cellmate because Officer McGuirt explained that all inmates are required to double cell. (*Id.*) Officer Peeples instructed Semien to cuff-up and exit his cell. (Dep. Semien 19:22-25; Decl. Peeples ¶ 5.) Semien refused and demanded that he speak to his cellmate first. (Dep. Semien 19:22-25; 20:1-5; 23:12-22.) Officer McGuirt repeated the order for Semien to cuff-up. (Compl. 3.) Semien admits that he again objected to the direct order to cuff-up. (Dep. Semien 23:12-17.)

7. After Semien twice disobeyed orders to exit his cell, the officers unlocked Semien's cell door and ordered him to back out of his cell. (Dep. Semien 20:1-5.) Semien demanded to speak to the superior officer. ( Dep. Semien 19:22-25; Decl. McGuirt Supp. Def.'s Mot. Summ. J. (Decl. McGuirt) Decl. McGuirt ¶ 4.) When this officer, Sergeant Pepiot, arrived, Plaintiff backed out of his cell. (Decl. McGuirt ¶ 7.) When Semien was within Officer Peeples' arm reach, she placed restraints on his hands. (Decl Peeples ¶ 5.) Semien was then ordered to side step to his left. (Decl. McGuirt ¶ 5.) There is a one-foot wall divider between cells and Semien was ordered to remain in this area. (*Id.*) As he backed out of his cell, Semien turned his head

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.

*Semien v. Peeples*
C 07-2803 CW (PR)

left towards Officer McGuirt and was swearing and demanding to speak to the sergeant. (Decl. Peeples ¶ 5; Dep. Semien 21:10-12.) Officer Peeples maintained control of Semien by placing her right hand on Semien's back, and her left hand on Semien's elbow. (Id.; Dep. Semien 21:5-8.) Semien continued to turn his head towards Officer McGuirt and demand that he speak to a sergeant. (Id.) Because Semien's head and upper body were turned, when Officer Peeples exerted pressure with her hands, she guided Semien toward the wall and away from the Officers. (Decl. Peeples ¶ 5; Dep. Semien 21:19-23.)

8.  When an inmate turns his head quickly to the left or right, an officer anticipates and tries to prevent an opportunity for that inmate to spit or head-butt the officer if agitated. (Id.) Officer Peeples was aware that Semien was agitated. (Id.) In response, she immediately maneuvered Semien toward the wall. (Id.) Officer Peeples applied a small amount of pressure with her hands, turning Semien closer to the wall and away from Officer McGuirt. (Id.; Decl. McGuirt ¶ 7.) Because Semien's head and upper body were turned toward Officer McGuirt, when Officer Peeples exerted pressure with her hands, she forced Semien to turn towards the wall and away from the Officers. (Id.; Dep. Semien 21:10-12.)

9.  Semien alleges that as he turned his head towards Officer McGuirt, Officer Peeples simultaneously pushed his back, which caused his face to hit the wall. (Dep. Semien 21:19-23.) Semien admitted he was standing so close to the wall before being pressed closer by Officer Peeples that he could have licked it with his tongue. (Dep. Semien 21-22:24-1.)

C.  **Semien's Alleged Lip Injury**.

10. Semien alleges that he hit his chin and face against the wall when Officer Peeples pushed his back towards the wall. (Compl. 4.) Semien testifies that when his face hit the wall, he hit his lip. (Dep. Semien 21:18-23.) In his complaint, Semien claims that he suffered a cut lip and sore chin. (Compl. 3). Semien testifies that there was a pain in his tooth that lasted for maybe a week and did not limit his ability to do anything. (Dep. Semien 30:1-7.) He admitted that he did not bleed immediately after the event, but he allegedly noticed that there was blood in his mouth later. (Dep. Semien 29:14-20.)

11. A few days after the alleged incident, a Medical Technician Assistant (MTA) examined

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.

Semien v. Peeples
C 07-2803 CW (PR)

5

1 Semien's lip by pulling his lip down and away from his face in order to view the alleged injury.
2 (Dep. Semien 28:13-17; 29:1-3.) According to Semien, the MTA gave him pain killers. (Dep.
3 Semien 28:19-21.) Semien did not testify that these were prescription painkillers, and he did not
4 visit the MTA again. (Dep. Semien 28:22-23.)
5     12. There are no medical reports of injuries relevant to this incident. (Decl. Peeples ¶ 7.)

### Legal Standard for Summary Judgment

    Federal Rule of Civil Procedure 56 provides that a summary-judgment motion shall be granted where no genuine issue exists concerning any material fact, and the moving party is entitled to judgment as a matter of law. The Supreme Court has stated that Rule 56(c) mandates summary judgment against a party who fails to sufficiently establish an element essential to the party's case, and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party's failure of proof on an essential element of its claim renders all other facts immaterial. *Id.*

    The Supreme Court has made clear that a party opposing a summary-judgment motion must affirmatively show that a dispute about a material fact is genuine, such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard requires that if any evidence produced in opposition to Defendants' motion is "merely colorable" or "not significantly probative," Defendants' motion must be granted. *Id.* at 249; *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288 (9th Cir. 1987). An opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. Semien may not rest on his complaint when opposing a summary-judgment motion. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

    The U.S. Supreme Court, in *Scott v. Harris*, 127 S. Ct. 1769 (2007), clarified the legal standard for summary-judgment motions. The Court concluded that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that [blatantly contradicted] version of the facts for

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.            *Semien v. Peeples*
C 07-2803 CW (PR)

6

1 purposes of ruling on a motion for summary judgment." *Id.* at 1776. The undisputed evidence
2 here, even when viewed in the light most favorable to Semien, *Matsushita Elec. Indus. Co. v.*
3 *Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986), shows that Officer Peeples is entitled to
4 summary judgment.

## Argument

### I.

### OFFICER PEEPLES IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE DE MINIMIS FORCE TO RESTRAIN SEMIEN AND DIFFUSE THE SITUATION DID NOT VIOLATE THE EIGHTH AMENDMENT

Officer Peeples's strategic use of force on November 8, 2006 was not a sadistic and malicious response to Semien's refusal to obey orders, but a typical maneuver employed to diffuse a potentially dangerous situation and ensure safety. Semien admits that he objected to direct orders to exit his cell from Officer Peeples and Officer McGuirt. (Dep. Semien 20:1-5; 23:14-17.) Semien also admits that he was turning his head while being restrained. (Dep. Semien 21:18-23.) Officer Peeples was aware that Semien was agitated and concerned that he may threaten the safety of herself and the other officers. (Decl. Peeples ¶ 5.) Semien testifies that he does not care what the prison rules dictate regarding inmates double-celling, and further that his priorities demand he speak to his potential cellmate first. (Dep. Semien 16:17-21; 14:11-13; 15:8-12.) Officer Peeples used strategic force to ensure that Semien did not spit in the officers' faces or head butt one of them. Pressing Semien against the wall allowed Officer Peeples to maintain better overall control and prevent Semien from twisting free from her hold on his arm. Semien's alleged lip injury is a direct result of his continued agitation, resistance to staff, and disruptive conduct. Moreover, Semien has failed to allege a constitutional violation because there was no more than minimal force and minimal injury.

### A.  Semien Cannot Show Excessive Force Unless He Demonstrates Evidence that Officer Peeples Used Force Maliciously and Sadistically for the Very Purpose of Causing Harm and Not in a Good-Faith Effort to Maintain or Restore Discipline.

When a prison official is accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether the force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). To make that ultimate determination, the Court should consider: (1) the extent of injury suffered by Semien; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) whether officials made efforts to temper the severity of a forceful response. *Hudson*, 503 U.S. at 12; *Whitley*, 475 U.S. at 321.

When using force, prison officials must balance competing interests such as the need to restore order, the very real threat the disturbance poses to inmates, and the possible harm to inmates against whom force is used. *Whitley*, 475 U.S. at 320. However, such decisions are "necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Id.* "Prison administrators . . . should be accorded wide-ranging deference in their adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). While officials are not insulated from actions taken in bad faith or for no legitimate purpose, courts should not second guess the judgment of the officials who have made a considered choice. *Whitley*, 475 U.S. at 322. Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury. *Id.*

    **1.  Semien Sustained a Minimal Lip Injury, Apparently From Officer Peeples's Act of Maneuvering Him Towards the Wall.**

In terms of the first factor under *Hudson*, the extent of injury suffered, Semien alleges he suffered a lip injury. (Compl. 3.) While Semien is not required to demonstrate that he suffered a serious injury to allege a constitutional violation here, minimal injuries "can serve as conclusive evidence that *de minimis* force was used." *Norman v. Taylor*, 25 F.3d 1259, 1262 (4th Cir. 1994)(en banc.) Semien presents no evidence that he sustained anything more than a de minimis injury to his lip as a result of being "push[ed]" into the wall inches from his face. (Compl. 3.) The MTA's inspection of Plaintiff's lip a few days after the incident found no injury requiring stitches or immediate attention. (Dep. Semien 28:13-14; 28:19-21.) Semien also testifies that

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.      *Semien v. Peeples*
C 07-2803 CW (PR)

8

1  the injury resulted in no immediate blood. (Dep. Semien 29:14-20.) Instead, the MTA provided
2  Semien with pain killers and Semien testifies that the pain subsided within a week and he did not
3  visit the MTA again. (Dep. Semien 28:19-21; 28:22-23.) This is evidence of, if anything,
4  minimal injury, and as such constitutes evidence that Officer Peeples used only minimal force
5  given the potential physical threat that Semien posed.
6      Further, Semien's damages request to compensate him for his emotional injuries should be
7  dismissed because he did not suffer more than de minimis injury in the alleged incident. The
8  Ninth Circuit made clear in *Oliver v. Keller*, 289 F.3d 623, 628 (2002) that § 1997e(e) of the
9  PLRA requires a showing of more than de minimis injury. Section 1997e(e) bars a prisoner from
10 bringing a federal action for mental or emotional injury suffered while in custody without a prior
11 showing of injury. 42 U.S.C. § 1997e(e). But Semien cannot show more than a minor lip injury.
12 He has not alleged nor does he present documentation that his lip required more than one visit to
13 an MTA who provided Plainitff with pain killers. (Dep. Semien 28:13-14; 28:22-23.) Therefore,
14 Semien's claim for relief for emotional injury allegedly suffered as a result of this lip injury
15 should be dismissed.
16     Because Semien cannot raise a triable issue of fact about whether Officer Peeples used more
17 than minimal force or whether Semien suffered any more than minimal injury, Officer Peeples is
18 entitled to summary judgment.
19     **2.  The Application of Minimal Force to Guide Semien Closer to the Wall Was
20          Necessary to Maintain Safety.**
21     Under *Hudson*, the second factor for examining an excessive force claim is the need for
22 application of force. 503 U.S. at 12. In the context of Semien's refusal to comply with the direct
23 orders of two Pelican Bay officials and his disorderly behavior after being restrained with
24 handcuffs, Officer Peeples exerted minimal force for the purpose of maintaining order and
25 discipline. The orders to submit to handcuffs and exit the cell were given by two different
26 officers at two separate times. (Compl. 3; Dep. Semien 19:22-25; 23:12-22). First Defendant
27 McGuirt arrived at Semien's cell and explained that all inmates are required to double cell if
28 compatible. (Compl. 3.) Officer Peeples then ordered Semien to exit his cell. (Decl. Peeples ¶

5; Dep. Semien 19:24-25.) Semien refused. (Dep. Semien 19:22-25; 23: 12-22.) Officer McGuirt repeated the order, and Semien demanded to speak with a superior officer. (*Id.*) When this officer, Sergeant Pepiot, arrived, Semien backed out of his cell and complied with the order to slide to the left of the cell, into the wall space between cells. (Decl. McGuirt ¶ 7.)

At this point, Semien was yelling and turning over his shoulder at Officer McGuirt, again demanding that he speak to the sergeant. (*Id.*) Officer Peeples was concerned that Semien would harm herself or Officer McGuirt because when an inmate turns their head quickly to the left or right they may spit or head-butt officers. (Decl. Peeples ¶ 5.) She was also aware that Semien was agitated because he was shouting at Officer McGuirt over his shoulder. (*Id.*) In response, Officer Peeples immediately maneuvered Semien toward the wall. (*Id.*)

### B. The Minimal Amount of Force Was Justified Under the Circumstances Because Semien Refused to Comply With Orders and Turned Toward Officer McGuirt in a Threatening Manner.

The third factor the Court should consider in determining an excessive force claim is the relationship between the need for force and the amount of force used. *Hudson*, 503 U.S. at 12. Officer Peeples employed a minimal amount of force solely to counter Semien's physical movement away from the wall. She applied a small amount of pressure with her hands, turning Semien closer to the wall and away from Officer McGuirt. (*Id.*) Because Semien's head and upper body were turned, when Officer Peeples exerted pressure with her hands, she forced Semien to turn towards the wall and away from the Officers. (Decl. Peeples ¶ 5; Dep. Semien 21:19-23.) Officer Peeples resorted to the typical and strategic use of force only when Semien's body language threatened the safety of the officers.

Further, to bring a claim for excessive force under the Eighth Amendment, the use of physical force must be more than de minimis. *Hudson*, 503 U.S. at 9-10. The Eighth Amendment does not prohibit minimal uses of physical force. *Id.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates [a prisoner's constitutional rights]." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotations and citations omitted). Here, Officer Peeples employed minimal force to guide Semien closer to the wall. Therefore, Officer Peeples is entitled to summary judgment.

1 | In addition, assuming that Officer Peeples in fact did push Semien into the wall, it would
2 | require that she employ a large amount of force to create an injurious impact from such a small
3 | distance. This was not the case. Semien testifies that he was standing so close to the wall that he
4 | could have licked it with his tongue. (Dep. Semien 21-22:24-1.) If Officer Peeples had her left
5 | hand on Semien's left elbow, and used her right hand to force Semien into the wall, it would
6 | require a great amount of strength to forcefully push Semien into the wall. (Decl. Peeples ¶ 5.) If
7 | the nonmoving party's version of facts is "blatantly contradicted by the record, so that no
8 | reasonable jury could believe it, a court should not adopt that version of the facts for purposes of
9 | ruling on a motion for summary judgment." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).
10 | Semien stands at approximately five foot six inches, one hundred eighty three pounds. (Decl.
11 | Korman Ex. B.) Officer Peeples is five foot one inch, and slimly built. (Dep. Semien 18:17-24.)
12 | Here, no reasonably jury could believe that a smaller officer such as Officer Peeples could push
13 | Semien so hard, while standing so close to the wall, that she could have caused injury by using
14 | excessive force.

### 1. Officer Peeples Reasonably Perceived a Need to Gain Semien's Compliance with the Order to Face Forward in Order to Maintain the Officers' Safety.

17 | The fourth factor for the Court to consider is the threat reasonably perceived the officer.
18 | *Hudson*, 503 U.S. at 12. Semien first refused to comply with orders to leave his cell and then
19 | provoked the situation by turning over his shoulder toward Officer McGuirt after Officer Peeples
20 | placed Semien in hand restraints. (Decl. Peeples ¶ 5.) The potential for a safety breach escalated
21 | when Semien continued to express his frustration both verbally, by yelling at Officer McGuirt,
22 | and physically, by turning over his shoulder towards Officer McGuirt and away from the wall.
23 | (*Id.*)
24 | As Semien testifies, there was a simultaneous action --- Officer McGuirt ordered Semien to
25 | face the wall and Officer Peeples maneuvered Semien to face the wall --- and this action was a
26 | response to an escalating and potentially dangerous situation. (Dep. Semien 21:19-23.) Officer
27 | Peeples reacted swiftly to ensure that no one was harmed. Semien provides no evidence that
28 | Officer Peeples applied force maliciously, for the sole purpose of causing harm. If anything,

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.

*Semien v. Peeples*
C 07-2803 CW (PR)

Semien's testimony supports the assertion that Officer Peeples and Officer McGuirt worked together to diffuse the situation and maintain order. (*Id.*) Further, Officer Peeples's reasonable action was immediately followed by Semien's non-violent escort to the housing rotunda. (Decl. Peeples ¶ 6.)

The final factor under *Hudson* is the officer's efforts to temper the severity of a forceful response. 503 U.S. at 12. Here, Officer Peeples applied minimal force to press Semien against the wall only after his physical and verbal actions threatened officer safety. She restrained Semien temporarily, and then continued to escort him, without further incident, to the housing rotunda. Because Officer Peeples used minimal force to respond to Semien's disruptive and potentially dangerous behavior, there are limited facts concerning whether she tempered her response.

Analysis of the factors presented in *Hudson v. McMillian* shows that Officer Peeples used force in a good faith effort to restore discipline, and not for the very purpose of causing harm to Semien. *Hudson*, 503 U.S. at 12; *Whitley*, 475 U.S. at 321. On the contrary, force was applied in this instance to diffuse the situation and maintain safety. In this case, there is no "reliable inference of wantonness," *Whitley*, 475 U.S. at 322, nor is there evidence presenting a dispute about any material issue. Officer Peeples is therefore entitled to summary judgment.

## II.

## OFFICER PEEPLES IS ENTITLED TO QUALIFIED IMMUNITY

**A. Semien Cannot Defeat Officer Peeples's Defense of Qualified Immunity Because She Took the Necessary Action to Restore Order and Acted Reasonably Under the Circumstances.**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Burns v. Reed*, 500 U.S. 478, 495 (1991) (citation omitted).

When a governmental official is accused of a constitutional violation, a particular sequence

of questions must be considered to determine if qualified immunity exits. *See Saucier v. Katz*, 533 U.S. 194 (2001). First, a court must ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If no constitutional right was violated under the alleged facts, the inquiry ends and defendants prevail. *Saucier*, 533 U.S. at 204.

If, however, a constitutional violation could be construed on a favorable view of the opposing party's submissions, the next step is to determine whether the right was clearly established. *Id.* at 201–02. The right's contours must be so clear that a reasonable official would know that his actions violate that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

### B. Officer Peeples Did Not Violate Semien's Clearly Established Rights When She Applied a Minimal Amount of Force to Maintain Safety.

The first step under *Saucier* is to determine whether, taken in the light most favorable to the party asserting the inquiry, the facts alleged show the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. 194. Defendant does not dispute that the Eighth Amendment protects prisoners from cruel and unusual punishment and the application of excessive force. As discussed above, however, the facts show that no constitutional right was violated in this action. Under *Saucier*, this Court's inquiry should end here.

### C. Officer Peeples is Entitled to Qualified Immunity Because It Would Not Have Been Clear to A Reasonable Official that Her Conduct was Unlawful.

Even were Semien's allegations to establish a constitutional violation, Officer Peeples would not clearly have known that such conduct was unlawful. *Saucier*, 533 U.S. at 202. Officers can make mistakes about the facts requiring a response, yet they will still be protected by qualified immunity as long as they acted reasonably under the circumstances. *Id.* at 205–06. When deciding whether to use force, prison officials must balance competing interests such as the need to restore order, the real threat that disturbances pose to other inmates and staff, and the

possible harm to inmates against whom force is used. *Whitley*, 475 U.S. at 320. Such decisions are "necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Id.* "Qualified immunity operates . . . to protect officers from the sometimes hazy border between excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206 (internal quotations and citations omitted).

In *Saucier*, the military police officers were accused of using excessive force when they removed the plaintiff, a protestor, from the scene of the Vice President's speech and violently shoved plaintiff into a van. The officers were entitled to qualified immunity because they acted reasonably in perceiving that plaintiff might have posed a threat to the Vice President, necessitating some urgency in removing plaintiff from the scene. *Saucier*, 533 U.S. at 208-09.

Similarly, Officer Peeples here reasonably believed that Semien caused a potential threat to the safety of the officers. (Decl. Peeples ¶ 5.) In response to Semien's disruptive and potentially dangerous misconduct, Defendant Peeples employed a typical and strategic maneuver to ensure safety. (Decl. Peeples ¶ 5.) She guided Semien toward the wall to ensure that he did not yell, spit, head butt, or in any way further disrupt his escort. (*Id.*; Decl. McGuirt ¶ 7.) In employing this maneuver, Officer Peeples did not act purposely to injure Semien but was responding to the threat that Semien's misconduct posed to the safety of the officers. Officer Peeples used reasonable force in a good-faith effort to restore and maintain discipline. *See Jeffers v. Gomez*, 267 F.3d 895, 912 (9th Cir. 2007) (holding that improper motive is an element of a constitutional claim, and the plaintiff must put forth specific, nonclusory allegations of improper motive.) Officer Peeples's use of immediate and minimal controlled force to gain Semien's compliance was not "clearly unreasonable" under these circumstances. *Saucier*, 533 U.S. at 202. And as in *Saucier*, Semien's limited injuries support the conclusion that the officers acted reasonably. *Saucier*, 533 U.S. at 209.

///

///

///

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.

*Semien v. Peeples*
C 07-2803 CW (PR)

14

## Conclusion

While performing her duties as a correctional officer, Officer Peeples was met with Semien's resistance to direct orders to exit his cell and further disruptive behavior once he was restrained outside his cell. Officer Peeples resorted to the use of force only when the situation escalated and proved potentially dangerous for the officers' safety. For the foregoing reasons, Officer Peeples respectfully requests that the Court grant summary judgment because the undisputed evidence demonstrates that she is entitled to judgment as a matter of law.

Dated: June 2, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DAVID S. CHANEY
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

THOMAS S. PATTERSON
Supervising Deputy Attorney General

*/s/ Lily Korman*

LILY A. KORMAN
Deputy Attorney General
Attorneys for Defendant Peeples

40252205.wpd
SF2007403202

Def.'s Not. Mot. & Mot. Summ. J.; Mem. P&A.

Semien v. Peeples
C 07-2803 CW (PR)

15